# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ROBERT J. LARSEN,**

        **Plaintiff,**

    v.                                                                           Case No. 18-CV-858

**ANDREW M. SAUL[1],**
**Commissioner of Social Security,**

        **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Robert Larsen alleges that he has been disabled since October 28, 2014, due to "L4-L5 disc herniation, L5 and S1 disc herniation, lumbar fusion, additional lumbar fusion due to failure of first surgery, left rotator cuff surgery, left frozen shoulder syndrome, uncontrolled insulin dependent diabetes, depression, hypothyroi[dism], and thyroid nodules." (Tr. 84-85.) In November 2015 he applied for disability insurance benefits. (Tr. 184-85.) After his application was denied initially (Tr. 84-94) and upon reconsideration (Tr. 95-106), a hearing was held before an administrative law judge (ALJ)

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is substituted as the named defendant in this action.

on November 30, 2017 (Tr. 31-62). On January 3, 2018, the ALJ issued a written decision concluding Larsen was not disabled. (Tr. 13-23.) The Appeals Council denied Larsen's request for review on May 1, 2018. (Tr. 1-3.) This action followed. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 4), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. The ALJ found that Larsen "did not engaged in substantial gainful activity during the period from his amended alleged onset date of October 28, 2014, through his date last insured of December 31, 2014[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.152(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Larsen had the following severe impairments: "left shoulder degenerative joint disease and degenerative disc disease[.]" (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the

impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 416.1526, 416.920(d) and 416.929) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Larsen "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" (Tr. 16.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the claimant's ability to perform both physical and mental work-related activities on a regular and continuing basis despite his impairments. *Moore*, 743 F.3d at 1121. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-4p. In other words, the RFC determination is a "function by function" assessment of the claimant's maximum work capability. *Elder v. Astrue*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Larsen had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except he could never climb ladders, ropes, or scaffolds. He could frequently climb ramps and stairs, balance, kneel, crouch, and occasionally crawl and stoop. He could occasionally reach overhead with his left upper extremity. He must avoid all exposure to hazards such as unprotected heights and moving mechanical parts. He must avoid exposure to extreme cold. He could occasionally be exposed to concentrated dusts, gases, fumes, odors, and poor ventilation.

(Tr. 16.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1526, 416.965. Larsen's past relevant work was as a landscaper and a construction worker. (Tr. 22.) The ALJ concluded that he "was unable to perform any past relevant work[.]" (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. At this step the ALJ concluded that, considering Larsen's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Larsen can perform. (Tr. 22-23.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Larsen's age, education, work experience, and RFC could perform the requirements of callout operator, document specialist, and circuit board assembler. (Tr. 23.) After finding that Larsen could perform work in the national economy, the ALJ concluded that he was not disabled. (*Id.*)

## STANDARD OF REVIEW

The court's role in reviewing the ALJ's decision is limited. It does not look at the evidence anew and make an independent determination as to whether the claimant is disabled. Rather, the court must affirm the ALJ's decision if it is supported by substantial

4

evidence. *Moore*, 743 F.3d at 1120. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1120-21 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Thus, it is possible that opposing conclusions both can be supported by substantial evidence. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

It is not the court's role to reweigh evidence or substitute its judgment for that of the ALJ. *Moore*, 743 F.3d at 1121. Rather, the court must determine whether the ALJ complied with his obligation to build an "accurate and logical bridge" between the evidence and his conclusion that is sufficient to enable a court to review the administrative findings. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014); *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). "This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic." *Thomas*, 745 F.3d at 806. If the ALJ committed a material error of law the court cannot affirm the ALJ's decision regardless of whether it is supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Farrell v. Astrue*, 692 F.3d 767, 770 (7th Cir. 2012).

**ANALYSIS**

Larsen argues that the ALJ erred (1) in evaluating the objective medical evidence; (2) in evaluating and giving weight to the opinions of treating physician Michael W. Jung, M.D., and state-agency consultant Pat Chan, M.D..; and (3) by improperly evaluating

5

Larsen's statements concerning the intensity, persistence, and limiting effects of his symptoms.[2] (ECF Nos. 8, 16.)

I. **Objective Medical Evidence**

    A. **Failed Back Syndrome**

Larsen argues that the ALJ failed to consider his failed back surgeries and "failed back syndrome." (ECF No. 8 at 5.) Failed back syndrome "'is a misnomer since it is not actually a syndrome but rather a very generalized term often used to describe the condition of patients who have not had a successful result with spine surgery.'" *Taylor v. Colvin*, No. 13 CV 4476, 2015 WL 7871343, at *5 (N.D. Ill. Dec. 3, 2015) (quoting *Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *7 n. 14 (N.D. Ill. June 22, 2004), *report and recommendation adopted*, 2004 WL 1664005 (N.D. Ill. July 21, 2004)). "It refers 'to chronic back and/or leg pain that occurs after back (spinal) surgery, usually after laminectomy.'" *Id.* (quoting *Schilling v. Epic Life Ins. Co.*, No. 13-cv-438-wmc, 2015 WL 85655, at *2 n. 6 (W.D. Wis. Feb. 27, 2015)); *see Lambert v. Berryhill*, 896 F. 768, 772 (7th Cir. 2018) ("Months later [a pain specialist] diagnosed [plaintiff] with failed back syndrome (meaning he experienced continuous pain despite surgeries) …."). "Where an ALJ addresses all of a claimant's alleged back and leg problems which 'are nearly identical to those associated with [failed back syndrome][,]' then failing to use the label [failed back syndrome] is not

---

[2] Larsen also argues that the ALJ mischaracterized the record. (ECF No. 8 at 18-20.) Since the court has decided that remand is necessary due to other errors, it will not address the ALJ's alleged mischaracterizations.

an error meriting remand or reversal because 'adding the label [failed back syndrome] would add nothing.'" *Taylor*, 2015 WL 7871343 at *5 (quoting *Fratantion v. Colvin*, No. 13 C 648, 2014 WL 3865249, at *14 (N.D. Ill. Aug. 5, 2014)).

Larsen does not contend that he had any specific limitations arising from failed back syndrome that was ignored by the ALJ. The ALJ considered Larsen's ongoing lower back and right leg pain by identifying degenerative disc disease as a severe impairment (Tr. 15), considering the effects of that impairment (Tr. 18), and giving significant weight to state-agency consultant Dr. Pat Chan (Tr. 19), who considered Larsen's medical history and concluded that "[h]e retains the ability to perform at least sedentary work" (Tr. 63-69). *See Lora S. S. v. Comm'r of Social Sec.*, No. 18-cv-0961-DGW, 2019 WL 2224069, *8 (S.D. Ill. May 23, 2019) ("The ALJ identified degenerative disc disease of the lumbar spine as a severe impairment and considered the effects of that impairment. Plaintiff has not identified any additional limitations arising from failed back syndrome.").) Therefore, given that the ALJ considered Larsen's ongoing lower back and right leg pain, specifically referencing "failed back syndrome" would not have altered her RFC analysis. *See Frantantion*, 2014 WL 3865249 at *15 ("Because the ALJ adequately considered [plaintiff's] lower back and leg pain, explicitly recognizing [failed back syndrome] would … have no effects on the ALJ's analyses at Step Three, the RFC assessment, or the credibility determination. It is true that the objective evidence demonstrates that [plaintiff's] first

surgery was a failure, however, adding the label [failed back syndrome] would not have altered the outcomes at these Steps.").

## B. Other Medical Records

Larsen argues that the "ALJ chose selectively from the parts of an MRI exam without mentioning the portions of that exam that are favorable to [him]." (ECF No. 8 at 7.) (Citing Tr. 15-16.) However, as the Commissioner points out, "the ALJ acknowledged that the MRI results supported [Larsen] having pain." (ECF No. 15 at 16.) The ALJ "limited [Larsen] to a less than full range of sedentary work with postural and environmental limitation" due to, among other things, "the lumbar MRI *which reflects some deficits*." (Tr. 18-19, 20, 21.) (Emphasis added.) Therefore, the ALJ did not improperly ignore portions of the MRI that favored Larsen.

Larsen also argues that the ALJ played doctor "[b]y citing the MRI and matters involving evaluation of tests." (ECF No. 8 at 9.) Citing *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016), he contends that the ALJ is not "qualified to interpret the MRI" or "evaluate objective tests such as gait, range of motion, sensory changes, reflexes, strength and physical examinations." (*Id.* at 8.) However, unlike the ALJ in *Israel*, the ALJ here did not independently interpret medical records. The ALJ relied upon Dr. Jonathan Jenning's and Dr. Paul Bullis's interpretations of the MRI (*see* Tr. 18 (citing Tr. 847[3]); Tr. 19 (citing

---

[3] The ALJ appears to have made a typo in citing "16F/18." The correct citation is "6F/18."

8

Tr. 970-71)), and simply (and correctly) observed that the medical records do "not indicate that [Larsen] had ineffective ambulation, abnormal gait, and significant decrease in range of motion, sensory changes, reflex abnormalities, positive straight leg raises, or recommendations of another invasive treatment to support disabling back impairment during [Larsen's] relevant period of disability" (Tr. 18). As such, the ALJ did not err in her evaluation of Larsen's medical records.

## II. Medical Opinion Evidence

### A. Dr. Michael W. Jung

In November 2017 Larsen's treating physician, Dr. Michael Jung, approved a "Performance Capability Chart" concerning Larsen's physical limitations. He opined that Larsen is able to perform sedentary work for one-to-three hours in an eight-hour work day, stand/walk for less than one hour in an eight-hour work day, sit for one-to-three hours in an eight-hour work day, use hands for repetitive simple grasping and fine manipulation, occasionally perform overhead work, and perform work at shoulder level with both hands. (ECF No. 2457-58.) He also opined that Larsen is unable to bend, squat, climb, and use feet for repetitive movement. (*Id.*)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v.*

9

*Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion" *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citations omitted), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

The ALJ gave little weight to Dr. Jung's opinion, concluding that it "is not consistent with the overall evidence in the record during [Larsen's] relevant period as it is overly restrictive." (Tr. 19-21.) She explained that Larsen "had normal motor strength, normal gait and station, normal coordination, [and] normal reflexes. [(Tr. 787.)] By December 2014 his medical records continued to note that he was doing okay with his current medication regimen. [(Tr. 963.)]" (Tr. 21.)

Larsen argues that "[t]he ALJ picked out two pages from a voluminous record … to support her rejection of [Dr. Jung's opinion]." (ECF No. 8 at 15.) Although an ALJ need not mention every piece of evidence, *Denton v. Astrue*, 596 F.3d 419, 425 (8th Cir. 2010),

the Court of Appeals for the Seventh Circuit has held that "'[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.'" *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) (quoting *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cr. 2010)).

Although Larsen "had normal motor strength, normal gait and station, normal coordination, [and] normal reflexes" at a December 2014 pre-operation exam for his shoulder, the ALJ improperly ignored the other relevant medical records that appear to support Dr. Jung's opinion. *Phillip M. v. Berryhill*, No. 2:18-cv-02071-SLD-EIL, 2019 WL 2022232, at * 5 (C.D. Ill. March 26, 2019) ("ALJs are required to consider all relevant evidence in the record, including evidence dated before the alleged onset date and after the date last insured.") (citing *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984); *Sucharski v. Astrue*, No. 08-C-0284, 2009 WL 3148724, at *12 n. 6 (E.D. Wis. Sept. 25, 2009)). On September 23, 2014, about a month before the alleged onset date, Dr. Jung reported that Larsen had "right sided low back pain that radiate[d] into his thigh and to his knees," antalgic gait, and moderately reduced range of motion. (Tr. 850.) Dr. Jung performed a lumbosacral joint injection. (Tr. 851.) On September 30, 2014, Larsen "cont[inued] to have increased pain along with [numbness and tingling] in the legs." (Tr. 957.) Megan Hackel, PAC, opined that Larsen would "likely need [to continue with [R]oxicodone 15 mg one tid PRN] indefinitely as [it] brings pain down to a tolerable level[.]" (*Id.*) On October 28, 2014, the alleged onset date,

11

Larsen's "activity level ha[d] decreased due to pain" and he inquired about an increase in his pain medication dose. (Tr. 960.) Ms. Hackel increased his Roxicodone use "from one tid to one qid PRN." (*Id.*) On December 30, 2014, Larsen continued to complain of lower back pain with radicular symptoms. (Tr. 963.) He said he was "doing ok" with his current medication regiment, but he was interested in a spinal cord stimulator "in hopes of better functional improvement." (*Id.*)

The ALJ also erred by finding Dr. Jung's opinion to be "overly restrictive," in part, because Larsen indicated on December 30, 2014, that he was "doing ok" with his current medication regimen. (*See* Tr. 21 (citing Tr. 962).) The ALJ failed to mention that Ms. Hackel had to increase Larsen's Roxicodone use on October 28, 2014, because his activity level had decreased due to pain. (Tr. 960.) Moreover, Larsen's statement that he was "doing ok" does not necessarily mean that his pain was controlled by his medication such that he was capable of full-time employment. One can be "doing ok" and yet still be disabled. *Cf. Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("The key is not whether one has improved …, but whether they have improved enough to meet the legal criteria of not being classified as disabled."); *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) ("One can be stable and yet disabled.").

Because of these errors, substantial evidence does not support the ALJ's decision to give little weight to Dr. Jung's opinion. On remand, the ALJ shall reevaluate Dr. Jung's opinion in light of the evidence in the record as whole.

### B. Dr. Pat Chan

Dr. Pat Chan assessed Larsen's physical RFC. (Tr. 69-70.) He opined that Larsen is able to occasionally lift and/or carry ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and push and/or pull (including operation of hand and/or foot controls). (Tr. 69.) He explained:

> [Larsen] has had more than one surgery fusion on his back because of pain. He is also diabetic and dependent on insulin. He has tried stimulators for the pain in his back with no help. With his last surgery on his back he has noted improvement in his abilities to do activities of daily living. He retains fairly good [range of motion] of his back but does have some tenderness to palpation. His pain is fairly well controlled with medication. He never showed neurological deficits throughout his surgeries and treatment. He retains the ability to perform at least sedentary work.

(*Id.*)

The ALJ gave significant weight to Dr. Chan's opinion, explaining:

> Dr. Chan's opinion is given significant weight as it [is] consistent with the medical evidence and [Larsen's] testimony. However, the [ALJ] finds that the record supports additional limitations to less than a full range of sedentary work. This evidence includes [Larsen's] statements that he had difficulty lifting/standing, limited range of motion and use of his left arm, ongoing pain, and the lumbar MRI, which reflects some deficits.

(Tr. 19.) Larsen argues that the ALJ improperly relied on Dr. Chan's opinion "because that opinion is dated April 15, 2014" and "[Dr. Chan] [did] not have the benefit of the

13

records of shoulder, spine (including the May, 2014 MRI) and other treatment records and opinions after April 15, 2014." (ECF No. 8 at 17-18.)

The introduction of additional medical evidence to the record after a state-agency consultant issues his opinion does not necessarily prevent the ALJ from relying on the state-agency consultant's opinion. *Alexis H. v. Berryhill*, No. 2:17-cv-00204-DLP-JMS, 2018 WL 3654799, at *8 (S.D. Ind. Aug. 2, 2018) (citing *Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017)). Although Dr. Chan did not have the benefit of reviewing any records after April 15, 2014, state-agency consultants Ronald Shaw, M.D., and Janis Byrd, M.D., reviewed all of the records through December 31, 2014—the date last insured—and indicated that Larsen had abilities in excess of Dr. Chan's RFC findings. (Tr. 79-80, 91-92; *see Keys*, 679 F. App'x at 481 ("It is true that [the state-agency consultants] did not review these reports, but [the plaintiff] has not provided any evidence that the reports would have changed the doctors' opinions.").) As such, the ALJ did not err in giving significant weight to Dr. Chan's opinion.

### III. Symptom Evaluation

In making his RFC determination, the ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304 at *3; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical

or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p, 2017 WL 5180304 at *3. The ALJ's evaluation of a claimant's symptoms is entitled to "special deference" and will not be overturned unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)).

Larsen "testified that he could not work due to pain in his lower back, right leg, and his shoulder." (Tr. 17.) The ALJ found that Larsen's "medically determinable impairments could not be reasonably expected to cause [his] alleged symptoms; however, [Larsen's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not consistent with the medical evidence and other evidence in the record[.]" (*Id.*) The ALJ then went on to evaluate the intensity, persistence, and limiting effects of Larsen's alleged symptoms. (Tr. 17-19.)

Since the ALJ went on to evaluate the intensity, persistence, and limiting effects of Larsen's alleged symptoms, it appears that she misspoke when she wrote that Larsen's "medically determinable impairments could *not* be reasonably expected to cause [his] alleged symptoms." (*See id.*) (Emphasis added.) Nonetheless, on remand the ALJ shall reconsider whether Larsen's medically determinable impairments could reasonably be expected to cause his alleged symptoms, and, if so, the ALJ shall reevaluate the intensity,

persistence, and limiting effects of those symptoms, taking into consideration Larsen's daily activities; the location, duration, frequency, and intensity of his pain; factors that precipitate and aggravate his symptoms; the type, dosage, effectiveness, and side effects of his medication; any treatment, other than medication, for relief of pain or other symptoms; any measures Larsen uses to relieve pain or other symptoms; and any other factors concerning Larsen's functional imitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *7-8.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of July, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge